UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA, *ex rel.*
JOSEPH MCBRIDE,

    Plaintiff/Relator,

v.                                                  Case No: 8:12-cv-792-T-27MAP

WASFI A. MAKAR, AMERICAN
CANCER TREATMENT CENTERS, INC.
and WASFI A. MAKAR, M.D., P.A.,

    Defendants.
_____/

## ORDER

**BEFORE THE COURT** is Defendants Wasfi A. Makar, M.D. and American Cancer Treatment Centers, Inc.'s Motion for New Trial on Damages and to Alter or Amend Amended Final Judgment, or Alternatively, to Vacate Final Judgment (Dkt. 52) and Plaintiff's response (Dkt. 56). Following a hearing on the motion, the record of which is incorporated hearin (Dkt. 63), both parties filed additional briefing (Dkts. 65, 66).[1] Upon consideration, the Motion is GRANTED and a new hearing will be conducted to determine the amount of damages.

### PROCEDURAL BACKGROUND

Plaintiff/Relator Joseph McBride brings this action against Defendants for violations of the False Claims Act ("FCA"), 31 U.S.C. § 3730 (Dkt. 1). The United States declined to intervene (Dkt. 2). On July 30, 2013, the Clerk entered defaults against Defendants Wasfi A. Makar, M.D. ("Dr.

---

[1] The parties were instructed to brief Plaintiff's theory of fraud and whether it is supported by the well-pleaded allegations of the Complaint and whether it can be linked to the amount of the Final Judgment.

1

Makar") and American Cancer Treatment Centers, Inc. ("ACTC") (collectively referred to as "Defendants") (Dkts. 10, 11).[2] On February 13, 2014, Plaintiff filed a Motion for Entry of Final Default Judgment against Dr. Makar and ACTC (Dkt. 19).[3] On March 14, 2014, an evidentiary hearing on the motion for default judgment was set for April 17, 2014 (Dkt. 25). On April 10, 2014, Plaintiff served Dr. Makar and ACTC with the order setting the hearing (Dkt. 28; Dkt. 37 at 4). At the April 17, 2014 hearing, Dr. Makar appeared on his own behalf and objected to the entry of default judgment. Dr. Makar conceded that the Defendants were properly served with the Summonses and Complaint in this action, but stated his belief, admitting it was erroneous, that the action was stayed as to all Defendants as a result of Defendant Wasfi A. Makar, M.D., P.A.'s ("Makar, P.A.") bankruptcy proceedings.[4]

At the hearing, Plaintiff submitted a spreadsheet of data, compiled from Medicare records, of the amounts paid by the government to Defendants pursuant to claims they submitted from December 2009 through February 2012.[5] It was Plaintiff's position, with which the government concurred, that every claim Defendants submitted within the relevant time period was fraudulent. This is so, according to Plaintiff, because the entire prescribed treatment plan for every patient between December 2009 and February 2012 was fraudulent. As such, each amount paid and included in the spreadsheet was the result of a false claim. The amount of damages therefore

---

[2] This case is stayed as to Defendant Wasfi A. Makar, M.D., P.A. pursuant to 11 U.S.C. § 362.

[3] Plaintiff filed an amended motion on April 9, 2013 (Dkt. 26).

[4] Makar, P.A. filed a Chapter 11 bankruptcy petition on May 1, 2012 (Dkt. 37-1, ¶ 13).

[5] Dr. Makar was permitted to review the spreadsheet during the hearing. The spreadsheet was initially filed under seal pursuant to a protective order based on patient privacy regulations. Plaintiff filed a redacted version of it on April 22, 2014 (Dkt. 36). The only information redacted was what Plaintiff represented were the individual patient identifier numbers.

appeared to be capable of mathematical calculation. Accordingly, Plaintiff's Amended Motion for Entry of Final Default Judgment (Dkt. 26) was granted and Plaintiff was directed to submit a proposed form of final judgment (Dkt. 34).[6] On April 28, 2014, Dr. Makar moved to set aside the Clerk's entry of default, which ACTC joined. The motion was denied and final judgment was entered in favor of Plaintiff United States of America *ex rel.* Joseph McBride and against Defendants Wasfi A. Makar, M.D. and American Cancer Treatment Centers, Inc. in the amount of $89,631,473.75 (Dkt. 47).

Defendants now seek a new trial on damages and to alter or amend the amended final judgment to address manifest errors of law and fact. Alternatively, Defendants seek to vacate the amended final judgment arguing that the judgment is void. Defendants contend that the evidence submitted in support of the default judgment, and consequently, the final judgment of damages, exceeded the scope of the well-pleaded allegations of the Complaint. In addition, they contend they were denied their due process right to contest the amount of damages ultimately awarded. At the hearing on the motion, a determination was made that the evidentiary hearing was conducted in a manner that was not violative of Defendants' due process rights (Hr'g Tr., 10:9-13, Aug. 14, 2014, Dkt. 63).[7] Defendants accept that by their default they have admitted the allegations in the

---

[6] Plaintiff filed a proposed form of final judgment on April 30, 2014 (Dkt. 40).

[7] Defendants' claim that the default judgment against them is void because they did not receive various forms of notice is meritless. "If the party against whom default judgment is sought *has appeared* personally or by a representative, that party or its representative must be served with written notice of the application at least seven days before the hearing." Fed.R.Civ.P. 55(b)(2) (emphasis added). Defendants did not appear before the hearing, and nevertheless, they received notice seven days prior. Moreover, Dr. Makar was present for the hearing at which time he had an opportunity to argue his position and voice any objections, which he did. Defendants also complain that they were not served with Plaintiff's motion for default judgment or his evidence regarding damages. However, "[n]o service is required on a party who is in default for failing to appear." Fed. R. Civ. P. 5(a)(2). Additionally, the Clerk entered the defaults on July 30, 2013, approximately nine months before the hearing, giving Defendants several months to ascertain the status of the case. Based on these facts, the requirements of due process and Rule 55 have been satisfied.

Complaint. The remaining issue to be addressed is whether the final judgment exceeded the scope of those allegations.

## STANDARD

Rule 59, Federal Rules of Civil Procedure, provides that a court may grant a new trial "after a nonjury trial, for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court." Fed. R. Civ. P. 59(a)(1)(B). Upon such a motion, the court may open judgment, take additional testimony, amend or make new findings of fact and conclusions of law, and direct entry of new judgment. Fed. R. Civ. P. 59(a)(2). "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Fed. R. Civ. P. 59(e). Because the Amended Final Judgment (Dkt. 47) awards damages for claims outside the allegations in the Complaint, a new damages hearing will be granted.

## DISCUSSION

Pursuant to Rule 55(b)(2), the court may enter a default judgment against a party against whom default has been entered. By its default, Defendants are deemed to have admitted the well-pleaded averments in the Complaint, except those as to the amount of damages. Fed. R. Civ. P. 8(d); *Klapprott v. U.S.*, 335 U.S. 601, 624 (1949). A court may enter a default judgment awarding damages without a hearing if the amount of damages is liquidated, is capable of mathematical calculation, or is demonstrated by detailed affidavits. *Adolph Coors Co. v. Movement Against Racism and the Klan*, 777 F.2d 1538, 1542 (11th Cir. 1985). The court may conduct a hearing to conduct an accounting, determine the amount of damages, establish the truth of any allegation by evidence, or investigate any other matter. Fed. R. Civ. P. 55(b)(2). In any case, "[a] court has an obligation to assure that there is a legitimate basis for any damage award it enters." *Anheuser Busch,*

*Inc. v. Philpot*, 317 F.3d 1264, 1266 (11th Cir. 2003); *Adolph Coors Co. v. Movement Against Racism & the Klan*, 777 F.2d 1538, 1544 (11th Cir. 1985) (explaining that damages may be awarded on default judgment only if the record adequately reflects the basis for the award). Rule 55(b)(2) affords "even a defaulted party the opportunity to contest the award of damages against it. . . . to insure that a nondefaulting party does not receive a windfall in damages simply because the defaulting party failed to contest liability. Thus, Rule 55(b) demonstrates a strong policy against awarding anything more than *actual* damages." *Gulf Coast Fans, Inc. v. Midwest Electronics Importers, Inc.*, 740 F.2d 1499, 1512 (11th Cir. 1984)).

Defendants contend that the Complaint does not allege that every Medicare-paid claim Defendants submitted between December 2009 and February 2012 was fraudulent. Thus, the damages evidence supporting the final judgment is not linked to the specific allegations in the Complaint. Plaintiff argues that every claim Defendants submitted, and the government paid, within the relevant time period was fraudulent because the entire prescribed treatment plan for every patient between December 2009 and February 2012 was rendered fraudulent by the daily billing for IGRT,[8] IMRT[9] and port films for every patient (*see* Dkt. 65, ¶ 4 (citing Dkt. 1, ¶ 57)).

### *Plaintiff's Complaint*

The substantive allegations in Plaintiff's Complaint relate to three areas of practices and procedures for which Defendants allegedly filed false claims between December 2009 and February 2012. First, the Complaint alleges that Dr. Makar instructed Relator and other therapists to image all patients on a daily basis and bill daily for IGRT, IMRT, and port films regardless of the location,

---

[8] Image Guided Radiation Therapy

[9] Intensity Modulated Radiation Therapy

5

size, and/or type of tumor (Dkt. 1, ¶ 57). Defendants had not, however, received IGRT imaging-equipped equipment (*id.*). To perform IGRT without imaging-equipped equipment, a physician must review and compare films and make any necessary adjustments to the position of the patient and/or radiation beams (*id.*, ¶ 58). Dr. Makar is alleged to be the only radiation oncologist for both ACTC locations, so it would be impossible for IGRT to be properly performed at both locations at the same time (*id.*, ¶ 59).[10] Yet, IGRT was billed for all patients on a daily basis by all therapists at both locations (*id.*)

Second, the Complaint alleges that Defendants billed for IMRT despite the multi-leaf collimator at the Rockledge location becoming inoperable in July 2011 (*id.*, ¶ 60). This made it impossible to perform IMRT properly on patients (*id.*). Nevertheless, Dr. Makar instructed Relator and the other therapists to bill daily for IMRT (*id.*).

Third, the Complaint alleges that Dr. Makar instructed therapists to perform patient-imaging after the radiation therapy, rather than before as required and medically indicated, if the imaging could not be accomplished prior to delivery of the radiation treatment (*id.*, ¶ 61). The Complaint goes on to allege that "[s]ince at least December of 2009, the Defendants submitted claims for all the foregoing goods and services that were allegedly provided to patients of both ACTC locations who are beneficiaries of federally-funded health programs" (*id.*, ¶ 62).

The Eleventh Circuit has held that "the False Claims Act is a fraud statute for the purposes of Rule 9(b)." *U.S. ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1309-10 (11th Cir. 2002) (quotations and citations omitted). As such, an FCA complaint must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b); *see Clausen*, 290 F.3d at 1310. The

---

[10] The two locations are Rockledge and Titusville.

particularity requirement of Rule 9(b) is satisfied if the complaint alleges "facts as to time, place, and substance of the defendant's alleged fraud, specifically the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them." *Hopper v. Solvay Pharm., Inc.*, 588 F.3d 1318, 1324 (11th Cir.2009) (citing *Clausen*, 290 F.3d at 1310). Generally, in order to plead the submission of a false claim with particularity, "a relator must identify the particular document and statement alleged to be false, who made or used it, when the statement was made, how the statement was false, and what the defendants obtained as a result." *U.S. ex rel Matheny v. Medco Health Solutions, Inc.*, 671 F.3d 1217, 1225 (11th Cir.2012).

Plaintiff's theory that the submission of claims for these three specific fraudulent practices or procedures rendered the entire course of treatment, and every claim submitted for every patient, between December 2009 and February 2012, is not pled and cannot reasonable be extracted from the allegations in the Complaint. The Complaint lacks necessary additional facts and details under Rule 9(b) to support Plaintiff's theory of the fraudulent scheme. Indeed, Plaintiff conceded at the hearing that this theory is not specifically stated in the complaint, but nevertheless argues that because every procedure that was billed requires physician supervision, all billings during the relevant time for every patient were fraudulent (Hr'g Tr. 19:15-20:13). This logic cannot be discerned from the allegations and specific facts to support it are not alleged at all, let alone with particularity.

The Complaint also does not allege that daily billing for IGRT, IMRT, and port films was necessarily fraudulent for every patient. And, the allegations themselves belie that conclusion. Although the Complaint alleges that Dr. Makar was the only physician for the two locations, it would have been possible for him to be at one of the locations. And, it is alleged that the multi-leaf collimator necessary for IMRT became inoperable "sometime in July 2011 at the ACTC in

Rockledge" (Dkt. 1, ¶ 60). This allegation does not encompass the entire time period alleged in the Complaint or the Titusville location. Finally, the allegation that Dr. Makar instructed therapists to image patients at the conclusion of a treatment session "*if* the imaging could not be accomplished prior to delivery of the radiation therapy treatment," as required and medically indicated, implies that imaging prior to delivery was possible in some cases (*see id.*, ¶ 61 ("therapists were unable to *always* have access to the equipment in order to image the patients at the beginning of the treatment prior to delivery of the radiation therapy" (emphasis added)).

Plaintiff has also not supplied caselaw that supports his theory. *U.S. v. Rogan*, 517 F.3d 449 (7th Cir. 2008), on which Plaintiff relies, is distinguishable because it involved an illegal kickback scheme. In *Rogan*, the defendant's medical center paid the physicians for patient referrals rather than medical services, in violation of the Stark Amendment to the Medicare Act, and the Anti-Kickback Act. *Id.* at 452-53. The district court awarded damages for all of the claims submitted for referred patients. *Id.* at 453. The Seventh Circuit found it unimportant "that most of the patients for which claims were submitted received some medical care---perhaps all the care reflected in the claims forms" and upheld the damages award. *Id.* In *Rogan* the illegal kickback scheme tainted each claim for every illegally referred patient. Here, there is no such scheme. That some of the procedures billed by Defendants were fraudulent does not necessarily taint each claim for every patient.

As the spreadsheet reveals, Defendants submitted claims on separate occasions over the course of a patient's treatment. While Defendants have admitted that a number of those claims were fraudulent pursuant to the well-pleaded allegations in the Complaint, Plaintiff must still establish the amount of damages associated with the fraudulent claims as encompassed by the Complaint. The categories of these claims are as follows:

(1) claims paid for IGRT when IGRT was not performed on the patient (Dkt. 1, ¶ 57-59);

(2) claims paid for IGRT where IGRT was performed on the patient without an imaging equipped linear accelerator and without the proper physician review necessary to perform IGRT without an imaging equipped linear accelerator (Dkt. 1, ¶ 57-59);

(3) claims paid for physician review of IGRT performed without an imaging equipped linear accelerator when IGRT was not performed on the patient (Dkt. 1, ¶ 57-59);

(4) claims paid for IMRT for patients at the Rockledge location from July 2011 through February 2012 (Dkt. 1, ¶ 60); and

(5) claims paid for IGRT where imaging was performed at the conclusion of the treatment session (Dkt. 1, ¶ 61).

An evidentiary hearing will be conducted to determine the amount of damages related to these claims. Defendants will not be permitted to contest liability or argue the merits of the allegations.

Accordingly,

1. Defendants Wasfi A. Makar, M.D. and American Cancer Treatment Centers, Inc.'s Motion for New Trial on Damages and to Alter or Amend Amended Final Judgment, or Alternatively, to Vacate Final Judgment (Dkt. 52) is **GRANTED**.

2. Execution on the Amended Final Judgment is **STAYED**.

3. The parties may conduct discovery on the issue of the amount of damages to be completed within **ninety (90) days** of this Order. At the expiration of this period, the parties shall file a joint status report.

4. An evidentiary hearing to determine the amount of damages will be set by further

Order.

    5.    The Clerk is directed to **ADMINISTRATIVELY CLOSE** the file.

**DONE AND ORDERED** this 15th day of October, 2014.

                                            JAMES D. WHITTEMORE
                                            United States District Judge

Copies to:
Counsel of Record